# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TYRONE BELL, | ) |
| Plaintiff, | ) |
| | ) No. 18-cv-02133 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| DANIEL MAKOWSKI, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tyrone Bell was napping in his parked car when Officers Daniel Makowski, James Stechly, and Jason Donato of the Village of Summit Police Department surrounded the vehicle and accused Bell of being under the influence. The officers did not perform a field sobriety test, however, and a blood test administered on the scene found no evidence of alcohol or illegal substances in Bell's system. Nonetheless, according to Bell, Officer Stechly fabricated a report stating that Bell had suffered a blackout and was involved in a dangerous driving incident. Under Illinois law, that report resulted in the immediate revocation of Bell's commercial driver's license ("CDL"). In his First Amended Complaint ("FAC") here, Bell asserts five claims arising out of the events leading to the revocation of his CDL. Two of those claims are the subject of the instant motion to dismiss: in Count II, Bell asserts a claim under 42 U.S.C. § 1983 against Officer Stechly for an alleged violation of Bell's right to occupational liberty under the Fourteenth Amendment to the United States Constitution; and in Count IV, Bell asserts a claim against Officer Stechly and the Village of Summit ("Village") for willful and wanton negligence under Illinois state law. Defendants have moved to dismiss those counts pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 40.) For the following reasons, the motion is granted.

**BACKGROUND**

For purposes of the present motion, the Court accepts as true all well-pleaded factual allegations in the FAC and draws all reasonable inferences from those allegations in Bell's favor. *See, e.g.*, *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

According to the FAC, Bell was taking a nap in his parked car when he was surrounded by Officers Makowski, Stechly, and Donato, who claimed to be performing a wellness check. (FAC ¶¶ 11–13, Dkt. No. 29.) At the time, Bell's car keys were on the passenger seat. (*Id.* ¶ 12.) After the officers requested his identification, Bell, who was a commercial truck driver, showed them his valid CDL. (*Id.* ¶¶ 19–21.) Bell informed the officers that he was fine, but they nonetheless accused him of being under the influence and ordered paramedics from the Village Fire Department to perform a blood test on-scene. (*Id.* ¶¶ 14–16.) No one performed a field sobriety test on Bell and the blood test showed no evidence of alcohol or illegal substances, so Bell was permitted to leave and was not charged with any crime. (*Id.* ¶¶ 17–18.)

Based on this incident, Officer Stechly sent an Official Sworn Police Report to the Office of the Secretary of State of Illinois, Drivers Services Department ("Secretary of State") indicating that Bell had suffered a blackout and performed a dangerous driving act. (*Id.* ¶ 23.) Because of the report, the Secretary of State revoked Bell's CDL pursuant to Chapter 92 of the Illinois Administrative Code, Section 1030.16, and sent him a notice of cancellation. (*Id.* ¶¶ 22, 24–25.)[1] Bell was required to surrender his CDL immediately, even though he had never been involved in any accident or other incident related to a blackout or attack of unconsciousness and he was not operating a motor vehicle in a dangerous manner. (*Id.* ¶¶ 26–27.) Without his CDL, Bell was

---

[1] Section 1030.16(c) requires the Secretary of State to cancel a CDL if an authorized source submits a report indicating that the license holder "was the driver of a motor vehicle involved in any type of accident or incident resulting from a seizure, an attack of unconsciousness or a blackout." Ill. Admin. Code tit. 92, § 1030.16(c).

unable to continue working as a truck driver. (*Id.* ¶ 28.) To regain his CDL, Bell had to obtain and submit medical reports, retake various examinations, and attend driving school—each of which caused him to incur various costs and fees. (*Id.* ¶¶ 29–33.)

Bell has now sued the Village, the police officers involved in the incident, and the two paramedics who drew blood from him. The five-count FAC asserts a claim against Officers Makowski, Stechly, and Donato under 42 U.S.C. § 1983 for an illegal search and seizure in violation of the Fourth and Fourteenth Amendments (Count I), a § 1983 claim against Officer Stechly for violation of Bell's Fourteenth Amendment right to occupational liberty (Count II), a claim against Officers Makowski, Stechly, and Donato, as well as the Village, for false arrest under Illinois common law (Count III), a claim against Officer Stechly and the Village for willful and wanton negligence under Illinois common law (Count IV), and a claim against Village paramedics Brandon Germany and James Tolf for common law battery (Count V). Defendants have moved to dismiss Counts II and IV.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint need not include detailed factual allegations, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). When considering a motion to dismiss, this Court construes the complaint in the light most favorable to the plaintiff and draws all inferences from the alleged facts in the plaintiff's favor. *Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 826–27 (7th Cir. 2014).

3

## I. Deprivation of Liberty

In Count II, Bell alleges that Officer Stechly's actions deprived him of occupational liberty in violation of his Fourteenth Amendment due process rights. The right to occupational liberty has long been recognized as protected by the Due Process Clause. *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (noting that "[t]he concept of liberty protected by the due process clause has long included occupational liberty—'the liberty to follow a trade, profession, or other calling'"); *see also Bryant v. Gardner*, 545 F. Supp. 2d 791, 798 (N.D. Ill. 2008). The right to occupational liberty does not include the right to any particular job, however. *Wroblewski*, 965 F.2d at 455; *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 575 (1972) ("It stretches the concept [of occupational liberty] too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains free as before to seek another."). Instead, it encompasses the liberty to pursue one's trade, occupation, or calling. *Wroblewski*, 965 F.2d at 455.

An individual's occupational liberty interests are implicated when, in the course of removing someone from an employment position, "the state imposes a stigma or other disability on the individual which forecloses other opportunities." *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). While such claims are usually raised in the context of public employment, *i.e.*, where the state is the employer, the Seventh Circuit has held that such claims may be asserted in other circumstances where government action results in an individual suffering "a tangible loss of other employment opportunities." *Dupuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005); *see also id*. at 510 (finding that the plaintiff had suffered the required tangible loss where placement of his name on a register of child abusers "place[d], by operation of law, a significant, indeed almost insuperable, impediment on [him] obtaining a position in the entire field of child care"). Here,

4

Bell has alleged not merely that he lost a particular job but rather that the revocation of his CDL prevented him from pursuing his occupation as a truck driver. Accordingly, he has satisfied that aspect of the pleading requirement. Indeed, Defendants appear to concede that the revocation of Bell's CDL deprived him of a liberty interest in pursuing a commercial trucking occupation, as they do not argue the point.

Nonetheless, Defendants contend that Bell has no cause of action against Officer Stechly for deprivation of occupational liberty because as a police officer he had no power to conduct hearings regarding a truck driver's fitness; instead, that authority lies solely with the Secretary of State. Indeed, "[i]t is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation." *Doyle*, 305 F.3d at 614. But while Officer Stechly had no direct control over the procedures by which Bell's CDL was revoked, he was nonetheless integrally involved in the deprivation. Under Illinois law, once a police officer submits a report that a motorist was involved in an accident resulting from a seizure, an attack of unconsciousness, or a blackout, the Secretary of State "***shall*** cancel" the driver's CDL. Ill. Admin. Code tit. 92, § 1030.16(c) (emphasis added). The Secretary of State's revocation decision is not discretionary; once it receives a report, revocation must follow. Thus, Officer Stechly personally caused Bell to lose his occupational liberty interest because his submission of the allegedly false and fabricated report to the Secretary of State resulted in the automatic revocation of Bell's CDL. Moreover, occupational liberty claims focus on the publication of stigmatizing comments. *See McMath v. City of Gary*, 976 F.2d 1026, 1032 (7th Cir. 1992) ("[O]nly if the defendants ***themselves*** published the defamatory material can [the plaintiff] recover for deprivation of his liberty interest.") (emphasis in original). And here, it was Officer Stechly who allegedly published stigmatizing comments by sending the fabricated report to the

5

Secretary of State. Thus, Bell has adequately pleaded Officer Stechly's personal involvement in the deprivation of an occupational liberty interest.[2]

But even if a plaintiff has adequately pleaded the deprivation of a liberty interest, the deprivation still must have occurred without due process. *See Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002); *see also Chi. United Indus., Ltd. v. City of Chicago*, No. 05 C 5011, 2007 WL 4277431, at *5 (N.D. Ill. Dec. 3, 2007)). Indeed, "any cause of action for deprivation of occupational liberty [is] confined to a claim under procedural due process; there is no such cause of action under substantive due process." *Zorzi v. Cty. of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994). So the question is what process, if any, Officer Stechly owed Bell and when must that process be available? *Simpson v. Brown Cty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). To answer those questions, three factors must be balanced: "first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Here, Bell takes issue with the fact that he received no pre-deprivation notice or opportunity to be heard and contest Officer Stechly's false allegations before his CDL was revoked.

As an initial matter, to the extent Bell takes issue with the process of the summary administrative action here, his constitutional challenge is better directed at the Secretary of State or the law by which his CDL was revoked rather than the law enforcement officer whose report initiated the administrative process. Normally, due process requires "an opportunity for some kind of hearing prior to the deprivation" of a liberty interest. *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981). But in certain emergency circumstances,

---

[2] Defendants defend the revocation procedures employed by the Secretary of State while at the same time correctly recognizing that to the extent Bell was dissatisfied with those procedures, his claim lies against the Secretary of State rather than Officer Stechly.

summary administrative action is justified. *Id.* at 299–300. One such circumstance when summary action is permissible is when "swift action is necessary to protect public health and safety." *Id.* at 300–01. Indeed, the United States Supreme Court rejected a challenge to a different Illinois law allowing the Secretary of State to suspend or revoke a driver's license without preliminary hearing in certain circumstances.[3] In *Dixon v. Love*, 431 U.S. 105 (1977), the Supreme Court reasoned that requiring the Secretary of State to provide a pre-deprivation hearing before revoking or cancelling a driver's license would impose too heavy a burden on the important public interest in safety on roads and highways. *See id.* at 114–115. That logic applies equally, if not more, to a police officer's submission to the Secretary of State of a report forming the basis for license revocation. Moreover, imposing such a requirement on law enforcement officers would be particularly burdensome because they are unlikely to be well-equipped to conduct such hearings and the added administrative duties would distract officers from their normal law enforcement work. *Cf. id.* at 114 (finding a substantial public interest in administrative efficiency that would be impeded by requiring the Secretary of State to provide a pre-deprivation hearing every time it revokes or suspends a driver's license).

Bell concedes that there is a strong governmental interest in keeping impaired and dangerous drivers off the roads but nonetheless contends that the interest does not apply here because Bell had no impairment. In essence, he argues that summary administrative action is not justified when the action is based on a false report. But every summary administrative action carries the risk of erroneous deprivation. This Court cannot conceive of a way to provide a pre-

---

[3] The law in question is now codified at 625 ILCS 5/6-206. The circumstances in which the Secretary of State is permitted to revoke a driver's license without a preliminary hearing include when an individual has been convicted of three moving traffic offenses within a 12-month period or has demonstrated an inability to exercise ordinary and reasonable care in the safe operation of a motor vehicle as indicated by being the driver in multiple motor vehicle collisions or receiving multiple convictions for traffic offenses.

deprivation hearing in circumstances like Bell's without requiring such a hearing for every subject of every such report submitted to the Secretary of State. Instead, it is fair to assume that police officers generally submit such reports in good faith and thus the risk of an erroneous deprivation is low. And in rare instances where reports are fabricated or based on honest mistakes, the Secretary of State has provided adequate post-deprivation procedures. *See Hudson v. Palmer*, 468 U.S. 517, 531–32 (1984) ("[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking satisfies the requirements of procedural due process." (internal quotation marks omitted)). In fact, Bell successfully availed himself of those procedures and regained his CDL.

Ultimately, while the FAC sufficiently alleges that Officer Stechly's actions deprived Bell of his occupational liberty, Bell cannot recover against Officer Stechly by way of a procedural due process claim. For that reason, the Court dismisses Count II of Bell's First Amended Complaint.

## II. Willful and Wanton Negligence

In Court IV, Bell contends that Officer Stechly's submission of a fabricated report to the Secretary of State constitutes willful and wanton negligence. To plead a claim for willful and wanton negligence, a plaintiff must "establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach." *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010). He must further show that the breach was not merely negligent but committed with "conscious disregard for the welfare of the plaintiff." *Id.* (internal quotation marks omitted).

However, Defendants argue that, generally, in Illinois "economic loss is not recoverable in tort." *Weisblatt v. Chi. Bar Ass'n*, 684 N.E.2d 984, 988 (Ill. App. Ct. 1997). Thus, the provision of false or inaccurate information that results only in economic loss is not recognized as actionable conduct, except under particular circumstances which do not exist here. *Id.*[4] In response, Bell does not address the economic loss rule. Instead, he argues that when a municipal officer intentionally misuses the powers of his office, he may be liable for those acts, even if he purports to act in the performance of official duties. Bell relies on two Illinois Appellate Court cases for this proposition, both of which have been overruled by the Illinois Supreme Court.[5] *See Barth v. Bd. of Educ. of the City of Chic.*, 490 N.E.2d 77 (Ill. App. Ct. 1986), *overruled by In re Chi. Flood Litig.*, 680 N.E.2d 265, 273 (Ill. 1997); *Young v. Hansen*, 249 N.E.2d 300 (Ill. App. Ct. 1969), *overruled by Vill. of Bloomingdale v. CDG Enters., Inc.*, 752 N.E.2d 1090, 1101 (Ill. 2001). Even if those cases had not been overruled, they are irrelevant as they addressed not the economic loss rule but the applicability of Illinois's Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq*. *Barth*, 490 N.E.2d at 81–82 *Young*, 249 N.E.2d at 303–04.

Because Bell alleges only economic loss, he must overcome the general rule that economic loss is not recoverable in tort. Yet Bell has not alleged or argued that his claim falls under any of the recognized exceptions. To the extent Bell relies on *Young* or *Barth* for the

---

[4] The recognized exceptions are professional malpractice and fraudulent or negligent misrepresentation. *See, e.g.*,*Weisblatt*, 684 N.E.2d at 988. Professional malpractice is clearly inapplicable here and fraudulent or negligent misrepresentation both require detrimental reliance by the recipient of the information. *See Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980); *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 777 N.E.2d 603, 606 (Ill. App. Ct. 2002). Bell has not alleged either of these exceptions apply to the instant case.

[5] In opposing dismissal of Count IV, Bell relies solely on two cases that have been expressly overruled with respect to the very proposition for which they are cited. Bell failed to put the Court on notice that those cases have been overruled. Whether this was the result of laziness or an intentional effort to deceive this Court, Bell's counsel is warned that such behavior is unacceptable and sanctionable.

proposition that other exceptions to this rule exist, his reliance is misplaced as both cases are irrelevant to the present issue and in any case have been expressly overruled by the Illinois Supreme Court. For these reasons, Defendants' motion to dismiss Count IV is granted and Count IV is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts II and IV of the First Amended Complaint (Dkt. No. 40) is granted.

ENTERED:

Dated: October 2, 2019

Andrea R. Wood
United States District Judge